855 A.2d 1213

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Barry K. WATSON.

Misc. Docket AG No. 17, Sept. Term, 2003.

Court of Appeals of Maryland.

Aug. 4, 2004.

Melvin Hirshman, Bar Counsel, Raymond Hein, Asst. Bar Counsel for Atty. Grievance Com'n, for petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel filed, pursuant to Maryland Rule 16–751 [1] of the Maryland Rules of Procedure, a Petition For

---

1. Rule 16–751 of the Maryland Rules of Procedure provides, as relevant:
 "(a) Commencement of Disciplinary or Remedial Action. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."
 Upon the completion of an investigation by Bar Counsel, unless there is a recommendation pursuant to Rule 16–735 (dismissal of the complaint or termination of the proceeding without discipline), Rule 16–736

Disciplinary Or Remedial Action, in which it alleged that the respondent, Barry K. Watson, the respondent, violated Rules 1.4, Communication,[2] 1.15, Safekeeping Property,[3] and 8.4,

(Conditional Diversion Agreement), 16–737(reprimand) or Rules 16–771, 16–773, or 16–774 (immediate filing of a Petition for Disciplinary or Remedial Action), Rule 16–734(d) requires that Bar Counsel "file with the Commission a Statement of Charges with an election for peer review in accordance with Rule 16–741."

Maryland Rule 16–741 governs the filing of statements of charges. It provides:

"(a) Filing of Statement of Charges.

"(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:

"(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;

"(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;

"(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and

"(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Rule 1.4 requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information" and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. Rule 1.15, as relevant, provides:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

Misconduct,[4] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Bar Counsel also alleged that, in addition, the respondent violated Maryland Rules 16–603, Duty to Maintain Account,[5] and 16–604, Trust Account—Required Deposits,[6] as well as Maryland Code (1989, 2000 Replacement Volume) § 10–306[7] of the Business and Occupation Article. The alleged violations were committed during the course of the respondent's representation of

---

4. Rule 8.4, as relevant, provides:
 "It is professional misconduct for a lawyer to:
 "(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so through the acts of another;
 "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 "(d) engage in conduct that is prejudicial to the administration of justice."

5. Rule 16–603 provides:
 "An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person."

6. Rule 16–604 provides:
 "Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

7. Maryland Code (1989, 2000 Replacement Volume) § 10–306 of the Business and Occupation Article provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Darrill Winder and his minor children in their personal injury claims arising out of a motor vehicle accident.[8]

We referred the case to the Honorable M. Brooke Murdock, of the Circuit Court for Baltimore City, for hearing. *See* Rule 16–757. Although served with process, the respondent did not file an answer, prompting the entry of an order of default. Following a hearing on the merits,[9] at which the respondent neither appeared, nor participated and in which testimony was elicited and exhibits considered from the petitioner, the hearing court made findings of fact, *see* Rule 16–757(c),[10] and drew conclusions of law, as follows:

## *"Findings of Fact*

"Barry K. Watson (hereinafter 'the Respondent') was admitted to the Maryland Bar on December 23, 1987. Throughout the period of the representation and events which are the subject of these findings, the Respondent maintained an office for the practice of law as a sole practitioner in Baltimore City.[11]

---

**8.** The Petition for Disciplinary or Remedial Action also charged the respondent with certain Rule violations in connection with his representation of Dorethia L. Glover. Those allegations of professional misconduct were withdrawn by the petitioner.

**9.** Notice of the order of default and the date it set for the hearing was mailed to the respondent at his last known address. Although that hearing date was rescheduled, the court, by letter, notified respondent of the new date.

**10.** Maryland Rule 16–757(c) provides:

"(c) Findings and Conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

**11.** In a footnote, the hearing court noted that it had been advised that, "effective April 8, 2003, the Respondent was decertified as an attorney

"In July 2001, the Respondent assumed representation of Darrill Winder and Mr. Winder's three minor children, Quashawn, Shacora and Tyneshia, (hereinafter referred to collectively as 'the Winders'), in connection with their personal injury claims arising from a motor vehicle accident which occurred on August 9, 2000. The Winders originally had been represented by the law firm of Hassan, Hassan & Tuchman, P.A. ('the Hassan firm'). Prior to July 2001, the Hassan firm had received Personal Injury Protection (PIP) payments on behalf of each of the Winders and deposited such funds for safekeeping in the firm's attorney escrow account. After being advised in July 2001 that the Winders had retained the Respondent as their new attorney, the Hassan firm transferred the escrowed PIP funds to the Respondent by the issuance of four checks drawn on the Hassan firm's attorney escrow account. Each of the checks was made payable to 'Barry Watson Escrow Account.' The four checks were issued in the following amounts."

| Check No. | Amount | For (Client) |
|---|---|---|
| 37852 | $869.56 | Quashawn Winder |
| 37853 | 893.23 | Tyneshia Winder |
| 37854 | 682.19 | Darrill Winder |
| 37855 | 877.04 | Shacora Winder |

"On or about July 17, 2001, the Respondent picked up the four checks from the Hassan firm along with the representation files for the Winders. In July 2001 and at all times thereafter, the Respondent maintained no attorney trust or escrow account in which client funds could be appropriately safeguarded. Shortly after obtaining the four escrow account checks issued by the Hassan firm, the Respondent cashed those checks or deposited the checks in a personal bank account. In either case, the Respondent did not deposit and safeguard the funds as trust money entrusted to him to hold for the benefit of the Winders or another beneficial owner. *See* Maryland Code, Business Occupations and Professions Article, § 10–301(d). The Respondent

in this State for non payment of the annual attorney's assessment [to] the Client protection Fund of the Bar of Maryland."

knowingly and willfully appropriated the Winders' PIP monies totaling $3,322.02 for his personal use and benefit.

"As of July 2001, the Respondent commenced representation of the Winders with respect to their claims against the allegedly negligent third party or parties responsible for their injuries. In October 2001, the Respondent agreed to negotiated settlements of the Winders' claims. The claims were settled jointly with Maryland Automobile Insurance Fund (MAIF) and Safeco Insurance Company, which insured the two vehicles involved in the accident. The Winders had been passengers in the vehicle insured by MAIF.

"In October 2001, the Respondent received a total of eight settlement checks, four issued by each insurance carrier. Each of the four MAIF checks was issued October 18, 2001 and was made payable jointly to the claimant and the Respondent, as follows:

| Check No. | Amount | Claimant |
|-----------|--------|----------|
| H10695 | $1,500.00 | Darrill Winder |
| H10696 | 750.00 | Tyneshia Winder * |
| H10697 | 1,000.00 | Shacom Winder * |
| H10698 | 750.00 | Quashawn Winder * |

* (The checks issued for the three minors were made payable jointly to Dana Taylor, as parent and/or guardian of each child, and Barry K. Watson, Atty.)

"Each of the four Safeco checks was issued [on] October 23, 2001 and was made payable to the claimant 'c/o Barry (or Barry Keith) Watson,' as follows:

| Check No. | Amount | Claimant |
|-----------|--------|----------|
| 0668152 | $1,500.00 | Darrill Winder |
| 0668153 | 750.00 | Tyneshia Winder |
| 0668154 | 1,000.00 | Sharma Winder |
| 0668155 | 750.00 | Quashawn Winder |

"The combined total amount of the eight settlement checks was $8,000.00. The Respondent forged the endorsements of his clients in order to negotiate all eight checks and retained all of the proceeds therefrom for himself. The Respondent did not deposit and safeguard the Winders' settlement funds as trust money. He knowingly and willfully appropriated such funds for his personal use and benefit.

"For a considerable period of time following the settlements, extending into mid–2002, the Respondent tried to conceal his actions by misrepresenting to Darrill Winder and Mr. Winder's wife, Dana Winder (a/k/a Dana Taylor), that he had not received any of the settlement checks. In September 2002, the Respondent turned over the Winders' representation files to Darrill and Dana Winder and admitted to cashing the insurance settlement checks issued by MAIF and Safeco.

"The Respondent has not repaid any of the misappropriated PIP monies and settlement funds.

### *"Conclusions of Law*

"This court concludes that the Respondent, upon being retained in July 2001 to represent Darrill Winder and Mr. Winder's three minor children, Quashawn, Shacora and Tyneshia, and while representing them thereafter, engaged in professional misconduct as defined in Maryland Rule 16–701(i) and Rule 8.4 of the Maryland Rules of Professional Conduct (MRPC), as adopted by Maryland Rule 16–812. The Respondent failed to keep the clients reasonably informed about the status of the representation and in fact knowingly misled Mr. and Mrs. Winder about the status in order to conceal his misappropriation/theft of client funds. The Respondent's actions violated the communication requirements of MRPC 1.4, as well as the prohibition against engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, MRPC 8.4(c).

"By receiving and accepting funds for the benefit of clients or third persons when he did not maintain an attorney trust account for the deposit of such funds, the Respondent violated the following Maryland Rules set forth in Title 16, Chapter 600:

### "Rule 16–603 Duty to Maintain Account.

"An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of

clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State. and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person.

**"Rule 16–604 Trust Account—Required Deposits.**

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

"The Respondent violated MRPC 1.15(a) by not holding the Winders' PIP monies and settlement funds separate from his own property and by not otherwise safeguarding the Winders' client funds. He violated MRPC 1.15(b) by failing to notify his clients upon receiving funds in which they had an interest, by failing to deliver to the clients funds to which they were entitled and by not rendering a full accounting of all client funds he obtained as the Winders' attorney.

"The Respondent knowingly and willfully misused trust money entrusted to him for the benefit of the Winders. Such conduct violated § 10–306 of the Business Occupations and Professions Article. The Respondent engaged in criminal acts reflecting adversely on his honesty, trustworthiness or fitness as a lawyer in other respects, in violation of MRPC 8.4(b). The Respondent's criminal acts include, but

are not necessarily limited to, theft (Md.Code, Criminal Law Article, § 7–104), fraudulent misappropriation by a fiduciary (§ 7–113) and counterfeiting of private instruments and documents (§ 8–601). The Respondent's criminal activities also establish violations of MRPC 8.4(c) & (d)."

Neither the petitioner nor the respondent filed exceptions to the findings and conclusions of the hearing court. As we have seen, the respondent did not participate in these proceedings. The petitioner has filed Petitioner's Recommendation for Sanction, in which it urges the respondent's disbarment. In support of that recommendation, it references the hearing court's finding that the respondent "misappropriated funds he obtained in his capacity as an attorney entrusted with clients' personal injury settlement checks," as well as personal injury protection funds transferred to him by prior counsel, forging the clients' endorsements to accomplish that result, and relies on *Attorney Griev. Comm'n v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 556 (2002); *Attorney Griev. Comm'n v. Mininsohn,* 380 Md. 536, 571–572, 846 A.2d 353, 375 (2004); *Attorney Griev. Comm'n v. Herman,* 380 Md. 378, 399–400, 844 A.2d 1181, 1194–1195 (2004).

Following oral argument, aware that the respondent was then not eligible to practice law, having been decertified by this Court for failure to pay his annual attorney assessment to the Client Protection Fund of the Bar of Maryland and having been informed that a preliminary injunction enjoining the respondent from practicing, attempting to practice, holding himself out as authorized to practice, law and "soliciting, charging or accepting payments intended as fees for legal services" had been obtained by the petitioner on May 26, 2004,[12] the Court issued, on June 3, 2004, a *Per Curiam* Order

---

12. Although the respondent did not appear or participate in the injunction proceedings, he was served both with process informing him of the action and giving him notice of the hearing and, on May 28, 2004, with the Order Granting Preliminary Injunction.

In deciding to grant the preliminary injunction, the trial court acknowledged that the respondent was decertified to practice law and expressed its satisfaction "that the [respondent] poses an immediate

immediately disbarring the respondent for "reasons to be stated in an opinion later to be filed." We now provide those reasons.

 This Court has consistently and repeatedly admonished that "[m]isappropriation of funds by an attorney is an act infested with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Brown*, 380 Md. 661, 668, 846 A.2d 428, 432 (2004); *Attorney Griev. Comm'n v. Hayes*, 367 Md. 504, 510, 789 A.2d 119, 123 (2002); *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001); *Attorney Griev. Comm'n v. Bernstein*, 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Griev. Comm'n v. Tomaino*, 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Griev. Comm'n v. Sheridan*, 357 Md. 1, 27, 741 A.2d 1143, 1156 (1999); *Attorney Griev. Comm'n v. Bakas*, 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). Moreover, our application of the general rule has been consistent: "disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds[.]" *Attorney Grievance Comm'n v. Hayes*, 367 Md. 504, 512–13, 789 A.2d 119, 124 (2002), and the cases therein cited. This is in line with the American Bar Association Standards for Imposing Lawyer Sanctions (1986). Standard 5.11 provides that:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an

and ongoing threat of causing substantial injury to the financial interest of members of the public who may pay the [respondent] to provide legal services, as well as substantial harm to the administration of justice by the continuation of his unauthorized practice of law."

attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

█ Our cases also are clear that "the burden is on the respondent to demonstrate—in Maryland, the burden of establishing factual matters in a defense must be carried by a 'preponderance of the evidence,' *[Attorney Griev. Comm'n v.] Powell,* 328 Md. [276,] 288, 614 A.2d [102,] 109 [ (1992) ]; *Attorney Griev. Comm'n v. Bakas,* 322 Md. 603, 605, 589 A.2d 52, 53 (1991)—that less severe discipline than that [recommended by Bar Counsel], or no discipline, should be imposed." *Brown,* 380 Md. at 669–670, 846 A.2d at 433, quoting *McCoy,* 369 Md. at 236, 798 A.2d at 1137. As we have seen, the respondent has made no submission and, indeed, has not participated at all in these proceedings. Consequently, the respondent certainly has not shown by a preponderance of the evidence that a less severe sanction than that recommended should be imposed in these proceedings.

Given the hearing court's findings, the only appropriate sanction in this case is disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BARRY K. WATSON.**