974 A.2d 331

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

**v.**

**Michael U. GISRIEL.**

**Misc. Docket AG No. 3, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 18, 2009.

Dolores O. Rigell, Asst. Bar Counsel (Melivin Hirshman, Bar Counsel, Atty., Grievance Commission of Maryland), for petitioner.

Timothy F. Maloney of Joseph, Greenwald & Laake, P.A. of Greenbelt, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

Michael Gisriel, ("Gisriel" or "Respondent"), was admitted to the Bar of this Court on December 29, 1976. On March 19, 2008, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a petition for disciplinary action against Gisriel, charging numerous violations of the Maryland Rules of Professional Conduct ("MRPC" or "Rule"), including Rule 1.1 (Competence),[2] Rule 1.3 (Diligence),[3] Rule 1.4 (Communication),[4] Rule

---

1. Rule 16–751(a) provides:

 (a) **Commencement of disciplinary or remedial action.**
 (1) Upon approval of the Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.1 provides:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. Rule 1.3 provides:

 A lawyer shall act with reasonable diligence and promptness in representing a client.

4. Rule 1.4 provides:

 (a) A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as

defined in Rule 1.0(f), is required by these Rules; (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

5. Rule 1.15 at the time of the acts in issue, provided:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Rule 1.15 was amended on March 12, 2007, effective January 1, 2008 to state:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16-607 b.

and Contentions),[6] Rule 8.1 (Bar Admission and Disciplinary Matters),[7] and Rule 8.4 (Misconduct).[8] The charges involved

> (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.
>
> (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.
>
> (e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

6. Rule 3.1 provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

7. Rule 8.1 provides:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

8. Rule 8.4 provides:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Gisriel's representation of Kenneth J. Barnhart and his wife, Marcia. This Court referred the matter to Judge Timothy J. Martin of the Circuit Court for Baltimore County for a hearing to determine findings of fact and conclusions of law pursuant to Maryland Rule 16–757.[9]

----

(d) engage in conduct that is prejudicial to the administration of justice;

(e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this paragraph;

(f) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law; or

(g) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

9. Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

On November 19, 2008, Judge Martin held an evidentiary hearing, during which Gisriel represented himself. By order dated December 18, 2008, we granted an extension for filing the Findings of Fact and Conclusions of Law until February 4, 2009. On January 23, 2009, Judge Martin issued Findings of Fact and Conclusions of Law ("Findings"), in which he found, by clear and convincing evidence, that Gisriel's acts and omissions constituted violations of Rules 1.1, 1.3, 1.4, 1.15, 3.1, 8.1, and 8.4:

### *Findings of Fact*

To the extent these findings of fact are based upon Petitioner's evidence, they are found by clear and convincing evidence. To the extent they are based upon Respondent's evidence, they are found by a preponderance of evidence. The facts found are as follows:

1. Michael Gisriel (Respondent) was admitted to the Bar of the Court of Appeals of Maryland in December 1976.

2. Thereafter Respondent practiced primarily in real estate law, deeds, land use, and real estate settlements.

3. Respondent has some limited experience in commercial litigation.

4. During times relevant to this matter, Respondent maintained an office for the practice of law in Towson, Baltimore County, Maryland. He operated with other attorneys in a law firm known as the Law Offices of Foard, Gisriel, O'Brien & Ward, L.L.C.

5. For approximately six years Respondent hosted a real estate radio show, and for three years wrote a question and answer column on real estate matters for the Baltimore Sun. As a result, the Respondent received numerous requests for pro bono service and provided same from time to time.

---

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

6. On February 16, 2002, Kenneth J. Barnhart and his wife, Marcia Barnhart, (Barnharts) signed a Residential Contract of Sale for the purchase of real property in Frederick County, Maryland. The contract was submitted through the Barnharts' agent, Len Moyer/Remax Columbia (Moyer/Remax), to Leonard Martin of Gold Key Real Estate (Martin & Gold Key), agent for the seller, John Dunenfeld (Dunenfeld).

7. The Barnharts made a $5,000 deposit by check which was held by Moyer.[10]

8. The contract signed by the Barnharts contained a mediation provision which mandated that neither party could initiate any legal action without first submitting any claim arising out of the contract to mediation.

9. For various financial reasons, the Barnharts could not consummate the transaction with Dunenfeld and sought to terminate the contract.

10. On March 9, 2002 the Barnharts tendered an agreement to terminate the contract to Dunenfeld.

11. Dunenfeld refused their tendered agreement to terminate the contract.

12. A third party referred the Barnharts to the Respondent for legal assistance in this matter.

13. On March 18, 2002, K. Barnhart met with the Respondent for the first time. After a brief discussion with the Respondent, K. Barnhart retained the Respondent to assist him and his wife in terminating the contract and recovering the $5,000 deposit.

---

**10.** Respondent filed an exception to the finding that the "Barnharts made a $5,000 deposit by check which was held by Moyer." Respondent argued that the check was made payable to "Re/Max Columbia" and the "Residential Contract of Sale explicitly stated that Re/Max would hold the deposit in escrow." Petitioner concedes that the hearing court's finding may be "technically incorrect." Both parties agree that this finding is in error, and we sustain Respondent's exception and note that Finding Number 7 should read the check was held by Re/Max. The change in the finding has no effect on our decision, however.

14. During this meeting with K. Barnhart, Respondent was privy to the original contract of sale and all other relevant documents. Neither K. Barnhart nor the Respondent could remember if the Respondent read this contract during the initial meeting.

15. K. Barnhart paid the Respondent $500 to accomplish the desired result with no agreement as to future expenses of Respondent and without any written retainer agreement.

16. On the same day (March 18, 2002), the Respondent faxed and mailed a letter to Martin (Gold Key) regarding the termination of the contract. The Respondent alluded to three reasons for the termination and indicated: "therefore, there has been no true meeting of the minds and the contract is a nullity and is hereby terminated." By this letter, Respondent requested the return of the deposit check.

17. The Respondent received no response to this letter.

18. At some point subsequent to the initial meeting of the Respondent with K. Barnhart, K. Barnhart asked his wife, M. Barnhart, to handle this matter and be the primary contact by and between the Respondent and the Barnharts. The majority of the communications between the Barnharts and the Respondent thereafter was made by M. Barnhart, who is now deceased.

19. In June or July of 2002, as a result of the Respondent's efforts, Respondent determined that Dunenfeld had sold the property to a third person in June of 2002. Neither he nor the Barnharts were notified of this fact by Moyer, Martin, or Dunenfeld.

20. At no time prior to the Respondent learning of the sale of the Dunenfeld property had Dunenfeld invoked the mediation provision contained in the contract of sale. No mention of it had been made by either side.

21. Between March 18 and July 9, 2002 the Respondent made occasional telephone calls to Martin regarding this matter.

22. Respondent received no meaningful or satisfactory response to these inquiries.

23. On July 9, 2002, the Respondent wrote Martin indicating his knowledge of the sale of the subject property and making yet another demand for the return of the deposit. In that letter he indicated that absent resolution, suit would have to filed.

24. Respondent received no real response to the July 9 letter. Both he and the Barnharts were frustrated at the lack of response and failed resolution of this matter.

25. At no time between July 9 and August 15, 2002 did Martin or Dunenfeld suggest or invoke mediation to resolve this dispute.

26. Respondent discussed the filing of a lawsuit with K. Barnhart against Moyer, Martin, and Dunenfeld sometime in the latter part of July and early part of August, 2002.

27. The Barnharts had no legal training and were completely dependent on the Respondent as to the advisability of filing said litigation.

28. The Respondent believed that the only way to get the attention of Dunenfeld or Martin was to initiate litigation. The Respondent believed that the contract had been terminated by the lack of any response, Dunenfeld's sale of the property, and believed that the contract was a nullity.

29. Prior to initiating the litigation, the Respondent discussed this matter with Phil Foard, a litigator in his office. The Respondent believed that seeking punitive damages would get the other party to negotiate this matter.

30. Respondent never discussed mediation with the Barnharts as an alternative to a resolution of his dispute.

31. Having received no response from Dunenfeld or Martin, Respondent filed a complaint against Moyer (and Remax), Martin (and Gold Key), and Dunenfeld in the Circuit Court for Frederick County on or about August 15, 2002. He sought a return of the $5,000 deposit and punitive damages from all parties.

32. The complaint alleged no facts which could possibly have represented a cause of action against Moyer/Remax. The complaint failed to state any facts suggesting malice, bad faith, evil motive, intent to injure, ill will, or fraud on the part of Martin, Gold Key, or Dunenfeld. No deliberate wrongdoing was alleged. The Respondent simply represented certain facts in a declaratory way and demanded punitive damages.

33. The Respondent brought the action not because he actually believed that punitive damages would lie but to get the attention of the parties. This he admitted to the court.

34. The Respondent re-sent the July 9, 2002 letter to Martin on September 16, 2008.

35. Respondent again received no response from Martin or Dunenfeld.

36. The litigation was initiated two and a half to three months after the house had been sold to a third party and six months after the Barnharts had signed the contract.

37. The Respondent did not serve the suit upon the Defendants until late October, 2002 in the hope and anticipation that he would receive a response from Martin or Dunenfeld. None was forthcoming.

38. Sometime after the litigation was instituted, the Respondent discussed the status of fees with the Barnharts and requested additional monies to continue to represent them.

39. In early February, 2003 the Respondent sent the Barnharts a bill for $1,350 for services already rendered.

40. K. Barnhart understood that, as the matter escalated, there would be more fees involved.

41. Sometime in early February, 2003, K. Barnhart indicated to the Respondent that he could not or would not pay additional fees. He wanted to put a stop to the Respondent's representation.

42. Prior to any court appearance, the Barnharts decided to take over their own case and advised the Respondent that he was out, i.e. no longer representing them.

43. The Barnharts and the Respondent agreed to the Respondent's withdrawal from the case as their attorney and the Respondent, in exchange for his withdrawal and their agreement, waived any fees previously owed by them.

44. On November 25, 2002 Martin ( & Gold Key) moved to dismiss the complaint and filed a counter-complaint for attorney's fees per Rule 1–341.

45. In December, 2002 Moyer ( & Remax) answered the complaint and filed a cross-claim for Interpleader (seeking $500 against the $5,000 for costs incurred).

46. On January 30, 2003 Dunenfeld moved to dismiss and for attorney's fees.

47. A hearing was scheduled for February 19, 2003 to address the open motions in the litigation.

48. On February 6, 2003, the Respondent requested a postponement of the motions hearing.

49. On February 13, the Circuit Court denied the Respondent's request for postponement.

50. On February 19, a snow storm prevented the Respondent from attending the motions hearing and he filed a motion for continuance and an affidavit to that effect.

51. By order of March 14, 2003 the Circuit Court continued the motions hearing to May 21, 2003.

52. After the conversation with the Barnharts with respect to further representation, the Respondent filed a motion for leave to strike his appearance along with an affidavit. This motion was filed on May 2, 2003.

53. The Respondent filed no written response to the motions of Moyer ( & Remax), Martin ( & Gold Key), or Dunenfeld.

54. A motions hearing took place on May 21, 2003. The Respondent did not attend. M. Barnhart appeared alone.

55. At this hearing, the judge *denied* the Respondent's written motion to strike his appearance but *granted the oral motion to strike of M. Barnhart.* At that point, the Plaintiffs (Barnharts) were pro se. (This court's emphasis).

56. At this motions hearing, the court granted Moyer/Remax's cross-claim for Interpleader, ordered that the clerk accept $4,500 into the registry of the court, ordered $500 to Remax for costs incurred, and dismissed the Barnhart's complaint against Moyer/Remax and Dunenfeld with prejudice.

57. The court reserved ruling on all claims for attorney's fees at the May 21, 200[3] hearing.

58. On or about May 28, 2003 Martin (Gold Key) filed a supplemental motion for attorney's fees attaching certain fee worksheets.

59. On or about June 4, 2003 Dunenfeld filed a Rule 1–341 motion for attorney's fees against the Respondent, his law firm, or, in the alternative, against the Barnharts. James Stuart was counsel for Dunenfeld. Attached to the motion was Mr. Stuart's invoice and third person affidavit as to the reasonableness and fairness of his bill.

60. On or about June 11, 2003 Respondent, on his behalf and on his firm's behalf filed an opposition to Martin's and Dunenfeld's Rule 1–341 motion for fees.

61. On June 25, 2003 Dunenfeld responded to the Respondent's opposition and again requested attorney's fees in the amount of $2,397.50 against either the Respondent and his firm or against the Barnharts.

62. A hearing on the extant motions was scheduled for Tuesday, September 23, 2003. The Respondent requested a postponement thereof by request filed on August 11, 2003.

63. On August 2, 2003, the Respondent filed a counter-motion for attorney's fees pursuant to Rule 1–341. This was brought against Martin (Gold Key), R. Mercer Jr. Esq., their attorney, as well as Dunenfeld and J. Stuart, his attorney. Attached to this motion was an affidavit by a Philip O. Foard, Esq. as to the fairness and reasonableness of the Respondent's fees.

64. Martin and Gold Key filed its opposition to the Respondent's counter-motion for the Barnharts on August 21, 2003.

65. After the court granted the Barnharts' oral motion to strike the Respondent's appearance, the Respondent was representing himself and his firm with respect to the fee dispute.

66. On August 18, 2003 Martin and Gold Key filed an opposition to the postponement request of the Respondent.

67. On September 4, 2003 the court denied the Respondent's request for a postponement of the September 23, 2003 hearing.

68. On September 23, 2003, the hearing took place before Judge Stepler on the issue of fees. Counsel for Moyer, Dunenfeld, and Martin (Gold Key) appeared as well as the Respondent. The Barnharts were not present. The Respondent made arguments on behalf of himself, his firm, and *the Barnharts* notwithstanding that his appearance had been previously stricken. (court's emphasis). The court heard arguments and awarded $2,642.50 to Dunenfeld against the Respondent and his firm; $2,733.57 to Meier, counsel for Martin (Gold Key) against the Respondent and his firm, and $1,963.57 to Meier (Martin & Gold Key) against the Barnharts.

69. Judgments were entered reflecting the above.

70. The Respondent paid and satisfied the judgments entered against him, his firm, and the Barnharts. The Barnharts contributed no funds towards the satisfaction of these obligations, nor were they requested to do so by the Respondent.

71. The Barnharts had no knowledge of the entry of the judgment against them or the judgments against the Respondent and the Respondent did not advise them of the result of the September hearing. K. Barnhart discovered this fact while going through some papers in late 2005 and early 2006.

72. The Barnharts had no communications with the Respondent as to the hearing or as to his satisfaction of the judgments.

73. In June of 2004, the Barnharts, pro se, went to mediation with Dunenfeld and agreed to an ultimate distribution of the $4,500 held in the court registry. The mediation agreement was unknown to the Respondent.

74. On June 29, 2004 the Barnharts and Dunenfeld filed a joint motion to release the funds. On July 8, 2004 the court ordered the release of the funds, $3,500 to Dunenfeld and $1,000 to the Barnharts. This was unknown to the Respondent.

75. On July 19, 2004 a check in the amount of $1,000 was drawn by the clerk of the circuit court and made payable to the Barnharts alone.

76. On or around that date, the clerk of the court erroneously mailed the check made payable to the Barnharts to the Respondent's address in Towson, Maryland.

77. The Respondent did not know the purpose or reasons for the issuance of the $1,000 check.

78. The Respondent signed the names of the payees, K. and M. Barnhart and wrote, "pay to the order of Michael Gisriel" on the check.

79. The Respondent believed that he was entitled to these funds as he had paid the judgment of the Barnharts.

80. The Respondent deposited the check in his operating, not escrow, account and used the funds for business and personal purposes.

81. The Respondent did not notify the Barnharts of the receipt of the check.

82. The Respondent had no authority, express or implied, to endorse the Barnharts' names and had no authority to negotiate the check and keep the funds as his property.

83. After a month or so, and having not received the anticipated check, the Barnharts inquired about the check to the clerk's office in the Circuit Court for Frederick County.

84. The Barnharts eventually received a copy of the check and realized the Respondent had signed their names and deposited the check in his firm account. The Barnharts were offended and upset.

85. The Barnharts called the Respondent to inquire but received no phone call(s) in return from the Respondent.

86. K. Barnhart contacted the State's Attorney's Office for Frederick County but no action was taken.

87. On or around April 19, 2007, M. Barnhart filed a grievance against the Respondent with respect to the facts and the circumstances of this matter and sought to recoup the $1,000.

88. On April 23, 2007 Bar Counsel sent correspondence to the Respondent attaching M. Barnhart's complaint seeking Respondent's response to same.

89. The Respondent answered Bar Counsel's inquiry with a letter dated May 1, 2007. In that correspondence, the Respondent explained the circumstances as he saw them, admitted to the receipt of the $1,000, but stated that he had *contacted* the Barnharts and *explained* the situation. Furthermore, the Respondent indicated that the Barnharts had *agreed*, at that time, that he should keep the $1,000 in partial payment for the $3,313.37 which was still owed to him. (Court's emphasis).

90. This court is unpersuaded that the Respondent ever communicated with the Barnharts about receiving the $1,000 and certainly does not accept the Respondent's assertions that the Barnharts agreed that the Respondent could keep the funds.

91. Furthermore, the Respondent's contention that he sent a letter dated October 5, 2004 to the Barnharts explaining all that had occurred is not accepted by this court. The Barnharts (K.Barnhart) denied the receipt of this letter and this court finds that the Barnhart's never received such letter and never communicated with the Respondent in 2004 about the $1,000 check.

92. M. Barnhart died in August, 2007.

93. After the grievance process started, K. Barnhart made affidavit averring that he had received the disputed $1,000 in the fall of 2007 from the Respondent and also his acceptance of the Respondent's apology and withdrew his

complaint against the Respondent, indicating his complaint had been satisfied and released. The Respondent had returned the $1,000 to K. Barnhart on or about November 5, 2007 following a Peer Review Panel Hearing.

94. A cover letter directed to the Court of Appeals was signed by K. Barnhart indicating that he has no desire to see sanctions against the Respondent which would deprive him of the ability to practice in his chosen profession and thereby provide for his family.

In assessing these facts, Judge Martin made the following conclusions of law:

### Conclusions of Law

This court is persuaded by clear and convincing evidence that the following Rules of Professional Conduct have been violated:

**I) 1.1 Competence:**

*A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.*

This court considered the relevant factors with respect to the issue of legal knowledge and skill to be employed. The court has considered the relative complexity and specialized nature of the matter, the Respondent's general experience, especially in the field in question, the preparation and study the Respondent was able to give the matter, whether he should have referred the matter to or associated or consulted with a lawyer of established competence. See comments to Rule 1.1. In this case Petitioner argues that there was a failure of the Respondent to inform the Barnharts of the terms of the contract. This court does not find necessarily that this is so. The Respondent certainly did not specifically discuss mediation or counsel fees, but there must have been enough discussion about the facts and circumstances for him to tender the March 18, 2002 letter and give the three reasons for terminating the contract and his position

that the contract was a nullity. Petitioner urges this court to look at the result and focus retrospectively. This court rather feels it is appropriate to start at the beginning and look prospectively. The Respondent had substantial experience in dealing with real estate matters, but little with litigation. He took the position that the contract was a nullity and maintained it for a long time. When Dunenfeld sold the property, without advising the Respondent or the Barnharts, he was even more convinced that the contract was a nullity, as of then incapable of performance. He would not have been thinking of mediation or counsel fees. He simply wanted contact and negotiation. Perhaps he was careless or even negligent and his erroneous conclusion that the contract was a nullity certainly was fatal to the case, but this court does not find by clear and convincing evidence a failure of competence relating to discussions or information to the client. See *AGC v. Kemp*, 335 Md. 1, 641 A.2d 510 (1994).

However and unfortunately, the Defendants filed motions to dismiss directed at his clients and he failed to timely respond. In truth he did nothing. He was still attorney of record but took no position for the Barnharts. These were the motions filed in November, 2002 and January, 2003. His failure is inexplicable to this court and certainly evidences a failure to demonstrate the requisite knowledge and skill required of him. This does indeed represent incompetence and this court so finds.

Furthermore, notwithstanding an agreement with the Barnharts that they would "take it from here" the Respondent's failure to appear at the May 21, 2003 hearing is again inexplicable and quite telling. The Respondent had no right to assume that his appearance had been stricken and certainly no right to simply not attend the hearing. This court must infer that Judge Stepler was most aggravated by his absence, which indeed did not bode well for the further conduct of the case. The Respondent's argument that they do things differently in Frederick County (as opposed to Baltimore County) cannot and does not represent an accept-

able excuse. As continuing counsel, he was duty bound to appear at the hearing and be prepared to represent the Barnharts. He did not attend and M. Barnhart appeared alone, a layperson facing several lawyers across the table. Certainly this was a fact not unnoticed by Judge Stepler. To this court this represented a failure of representation and a failure to provide the skill, legal knowledge, thoroughness, and preparation required of him. Unfortunately, it was a complete lack of representation. See *AGC v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000); *AGC v. Tinsky*, 377 Md. 646, 835 A.2d 542 (2003).

## II) 1.3 Diligence:

*A lawyer shall act with reasonable diligence and promptness in representing a client.*

As the comments indicate, a lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. Certainly the Respondent knew upon receiving the motions to dismiss that mediation was an issue as well as counsel fees. Inexplicably, as indicated above, he did not respond to the motions nor discuss with the Barnharts what the end result could be. The conduct as described in Paragraph I certainly provides clear and convincing evidence that the Respondent did not act with reasonable diligence and promptness. See *AGC v. Zdravkovich*, 362 Md. 1, 762 A.2d 950 (2000); *AGC v. Brugh*, 353 Md. 475, 727 A.2d 913 (1999). This court so finds.

## III) 1.4 Communication:

*(a) A lawyer shall keep a client reasonably informed about the status of the matter and promptly comply with reasonable requests for information.*

*(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.*

Reasonable communication between the lawyer and the client is necessary for the client effectively to *participate* in the representation. See Comment 1 (this court's emphasis). The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part on the kind of advice or assistance that is involved. In litigation, a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. See Comment 5 to this Rule. As the court indicated in paragraph I, this court does not find that the Respondent did not reasonably keep his clients informed regarding the status of this case until the ultimate decision was made to initiate litigation against all the parties. However, at that point, the Respondent did not meet the requirement that he reasonably inform the Barnharts by explaining the matter to them in a manner reasonably necessary to permit them to make informed decisions. In this, the Respondent was utterly lacking. The Barnharts knew nothing about the mediation requirement, knew nothing of the fact that mediation was required before filing litigation, and certainly knew nothing about possible sanctions, i.e. fees, etc., which could befall them in this regard. The Respondent's failure to communicate with the Barnharts was compounded when he failed to advise them of the result of the attorney fees hearing. Even though he was not officially their counsel of record, he admitted arguing their position at the September 23, 2003 hearing. The results certainly affected them and the situation was made worse by his failing to advise them of the judgment against them. He failed to advise them of his satisfaction of the judgments and exacerbated his failures to communicate upon his receipt of the check, his actions thereafter, and his utter failure to keep them advised of these circumstances. His explanations of his attempts to do so were completely unpersuasive to this court.

The court finds a failure to communicate by the Respondent and a violation of Rule 1.4(a) and (b). See *Taylor v. Feissner*, 103 Md.App. 356, 653 A.2d 947 (1995); *AGC v. Harris*, 371 Md. 510, 810 A.2d 457 (2002); See *Mooney*, 359 Md. 56, 753 A.2d 17 (2000).

**IV) 1.15 Safekeeping Property:**

*(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.*

*(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.*

*(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.*

All property of clients or third persons, including prospective clients, must be kept separate from the lawyer's business and personal property and, if money, in one or more trust accounts.

Normally, it is impermissible to commingle the lawyer's own funds with client funds. See Comments to Rule 1.15.

Respondent's position that he kept the one thousand dollar check, made payable solely to the Barnharts, as payment for funds he had expended in satisfying the judgment against the Barnharts is wholly unacceptable to this court. He was clearly duty bound to deposit the check in a separate account and he admittedly failed to do so. Without authority or consent, he deposited the check in his operating account and used the funds for personal or business purposes. As indicated, he failed completely to notify the Barnharts of his receipt of the check and certainly rendered no accounting to them which would have indicated his position and reasons for keeping the funds.

The obvious question this court addresses is how could the Barnharts even take a position regarding the check when they knew nothing about it? They had no clue of any of the circumstances and anticipated the check which, unfortunately, was directed to the Respondent. The Respondent obviously commingled their funds with his funds. These actions constitute multiple violations of Rule 1.15, specifically 1.15(a)(b)(c).

### V) 3.1 Meritorious Claims and Contentions:

*A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case has been established.*

The advocate has a duty to use legal procedure for the fullest benefit of the client's cause but also a duty not to abuse legal procedure. What is required of lawyers is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. See Comments 1 & 2.

This court is perplexed as to what exactly the Respondent was thinking when he filed the lawsuit against all the parties. He had never invoked the mediation provision, notwithstanding the mandate of the contract, and simply sued everyone claiming punitive damages and a return of the deposit. To this court, the lawsuit had no merit. There was no basis for doing so that was not frivolous. There was no basis for punitive damages and none was alleged. There was no basis whatsoever to sue Moyer/Remax who were no more than stakeholders. The contract clearly provided steps to be taken by Moyer in the event of a dispute. The respondent never gave them the ability to do so and completely ignored this provision.

There was no basis to sue Martin or Gold Key. The Respondent knew that they were not holding the deposit, he alleged no basis for punitive damages against them. See *Darcars Motors of Silver Springs, Inc. v. Borzym,* 379 Md. 249, 841 A.2d 828 (2004). He simply included Martin/Gold Key in his shotgun approach to get everyone's "attention." These actions were clearly violations of Rule 3.1.

There were no allegations of knowing or deliberate wrongdoing by Dunenfeld. *Id.* All the defendants were required to seek counsel, all incurred expenses, all filed responsive hearings, and none of this was necessary but for the actions of the Respondent. Although not evidence of a violation of this rule as such, it is certainly clear to this court in the conclusions of the trial judge in granting the fees and sanctions against the Respondent and Barnharts that she believed the Respondent's lawsuit had no merit. See *AGC v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999). The Respondent's supplemental counter complaint for attorney's fees was without merit. It appeared to be, for the most part, a mere recitation of the very reasons given by the defendants in their motions against the Respondent and Barnharts. The Respondent's actions in filing the lawsuit and the supplemental counter complaint for fees were without merit and had no basis not frivolous in nature. The legal process should never be used as the Respondent did here,

i.e., merely a device to apply pressure to the other parties to secure the return of the deposit, actions which completely backfired. These actions represent violations of Rule 3.1.

### VI) 8.1 Bar Admission and Disciplinary Matters:

*An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:*

*(a) knowingly make a false statement of fact; or*

*(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.*

Regrettably, the Respondent was untruthful to Bar Counsel in his response to its inquiry (See Respondent's letter of 5/1/07). Although this court does not necessarily find untruth or falsity in his description of the trial judge's ruling which could merely represent his subjective feelings and viewpoint, the Respondent knowingly made false statements by indicating that he had *contacted* the Barnharts, *explained* the situation to them, and that they *agreed,* at that time, that he could keep the one thousand dollars. (court's emphasis). These statements are anything but the truth. Additionally, this court does not accept his response that he sent a letter dated October [5], 2004 to the Barnharts. The Respondent's position, to this court, is a fabrication made after the fact and unacceptable. His actions made much worse the already bad situation he had found himself in. These acts clearly and convincingly persuade this court that he violated Rule 8.1(a).

### VII) 8.4 Misconduct:

*It is professional misconduct for a lawyer to:*

*(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another; ...*

*(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;*

*(d) engage in conduct that is prejudicial to the administration of justice; ....*

This court has found a violation by the Respondent of Rules 1.1, 1.3, 1.4, 1.15, 3.1, and 8.1. As such, these violations are professional misconduct in violation of Rule 8.4(a) and this court so finds.

Honesty is of paramount importance in the practice of law. See *AGC v. Ellison,* 384 Md. 688, 867 A.2d 259 (2005). Candor and truthfulness are two of the most important moral character traits of a lawyer. See *AGC v. Myers,* 333 Md. 440, 635 A.2d 1315 (1994). This court concludes, by clear and convincing evidence, that from the point in time whereupon the Respondent received the one thousand dollar check, he engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. He never told the Barnharts of any obligation he felt they owed him. They knew of none. He never told them of the receipt of the check. He never had authority or consent to endorse their names. He forged their names. He kept their funds without their consent. His actions, his forgery, violated the Rules and Criminal Law Article Section 8–602. See *AGC v. James,* 333 Md. 174, 634 A.2d 48 (1993). Even if the Respondent's tortured explanation of why he did what he did could somehow be accepted, he was not entitled to simply use self help by keeping their funds. See *AGC v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999). Unfortunately, this court is of a mind that the Respondent believed the Barnharts did not know of this check and they would never be the wiser. This is clearly dishonesty. His commingling of their funds with his funds involved dishonesty, fraud, deceit, or misrepresentation. See *Bar Association of Baltimore City v. Carruth,* 271 Md. 720, 319 A.2d 532 (1974).

The totality of the Respondent's actions represented conduct prejudicial to the administration of justice by his acting in such a manner which would seriously impair public confidence in the legal profession. See *AGC v. Robertson*, 400 Md. 618, 929 A.2d 576 (2007). His forgery and misappropriation of the Barnharts' funds is likely to impair the public confidence in the legal profession. This court by clear and convincing evidence finds a violation of Rule 8.4(a)(c) & (d).

This court feels compelled to make further remarks. The court recognizes that the sum of money involved is perhaps not huge. This court recognizes that the Respondent eventually returned the money to the Barnharts (although rather late in the disciplinary proceedings this court might add). This court recognizes that the Respondent paid the judgment against the Barnharts and they had been made whole. This court is aware of Mr. Barnhart's magnanimous expression of forgiveness and support for the Respondent. However, this court is disheartened by the Respondent's rather cavalier attitude towards the facts, circumstances, and these proceedings. His apology to the Barnharts was late coming and appeared to be conditioned upon their forgiveness of him. He complains bitterly of Petitioner's actions as virtually a witch-hunt (this court's words) and did not truly express any contrition or self-awareness of what had occurred in this matter. These observations are as disheartening as the Respondent's actions in the matter under scrutiny.

Following the issuance of the judge's Findings of Fact and Conclusions of Law, Gisriel obtained counsel and moved to reopen the record and have additional hearings based upon a proffer of newly-discovered evidence that showed he did not fabricate an October 5, 2004, letter to his clients, alluded to in Paragraph 91 of Judge Martin's findings, which figured in the hearing judge's conclusion that Rule 8.1 was violated. On March 3, 2009, we granted Respondent's motion and remanded the matter to Judge Martin for the limited purpose of conducting a supplementary evidentiary hearing on or before

March 27, 2009, and filing any supplementary findings of fact and conclusions of law.

Judge Martin conducted a supplementary hearing and filed Supplementary/Amended Findings of Fact and Conclusions of Law ("Amended Findings"), in which he found, by clear and convincing evidence, that Gisriel's acts and omissions constituted violations of Rules 1.1, 1.3, 1.4, 1.15, 3.1, and 8.4, but not of Rule 8.1:

### FACTS

\* \* \*

The following finding of facts are amended or supplemented;

Number 71 is amended to read: Until September 30, 2004, when Respondent and M. Barnhart discussed this matter by telephone, the Barnharts had no knowledge of the entry of the judgment against them or the judgments against the Respondent, did not know of the results of the September, 2003 hearing, nor the fact that the Respondent had paid the judgments.

Number 72 is amended to read: Until September 30, 2004, the Barnharts had no communication with the Respondent as to the September, 2003 hearing or as to his satisfaction of the judgments.

Number 81 is amended to read: Until September 20, 2004,[11] the Respondent did not notify the Barnharts of his receipt of the check.

Number 85 is amended to read: The Barnharts called the Respondent to inquire about the check and the Respondent made efforts to call the Barnharts but they had no communication until the September 30, 2004 telephone conversation.

---

11. Bar Counsel excepted to the finding of September 20, 2004, rather than the correct date of September 30, 2004. We sustain Petitioner's exception and note that Amended Finding Number 81 should read September 30, 2004.

Number 90 is amended to read: Until September 30, 2004, approximately two months after the Respondent received the check, Respondent did not communicate with the Barnharts about receiving the $1,000. The Respondent and M. Barnhart discussed the $1,000 check on September 30, 2004 and Respondent explained his position to M. Barnhart. The Respondent's letter of October 5, 2004 confirmed their discussion and requested that the Barnharts let Respondent know if they still believed Respondent owed them the money. No communication between the Respondent and Barnharts occurred after the September 30, 2004 conversation until after the grievance process was initiated a few years later.

Number 91 is amended to read: Respondent's contention that he sent a letter dated October 5, 2004 is accepted by this court. The Respondent mailed the letter to the Barnharts but this court is unclear as to whether the Barnharts actually received the letter. The first actual communication between the Barnharts and Respondent occurred September 30, 2004, more than one year after the attorneys' fees hearing.

## CONCLUSIONS OF LAW

This court's conclusions of law that Respondent violated Rule 1.1, Competence, 1.3, Diligence, and 3.1, Meritorious Claims and Contentions are unaffected by this court's supplemental/amended findings of fact and remain unchanged.

**Rule 1.4 Communication:**

As this court stated previously, the court was not persuaded by clear and convincing evidence that Respondent did not reasonably keep the Barnharts informed regarding the status of their case so that they could participate intelligently in the decisions regarding their objectives up to and at the point of initiating litigation. However, with respect to the advisability of this litigation, the determination to seek punitive damages, and the possible sanctions which could befall them, none were ever explained to the

Barnharts by Respondent. The attorneys' fees hearing took place on September of 2003. Respondent failed to advise them of the results of this hearing until, at best, September of 2004, *more than one year later.* (court's emphasis). The results of the hearing certainly affected them and Respondent was completely silent. He failed to advise them of the judgment against him, them, and his satisfaction of all the judgments until a year later. He failed to advise them of his receipt of the $1,000 check until, at best, two months after his receipt of same. All of these facts persuade the court by clear and convincing evidence that Respondent failed to reasonably communicate with them as required by this rule. The court adds that Respondent's conversation with M. Barnhart (finally) and his follow-up with the October 5, 2004 letter do mitigate, to a large extent, the severity of his violation(s) of this rule. They do not, however, alter this court's fundamental conclusions.

**Rule 1.15 Safekeeping Property:**

This court's prior conclusions as to Respondent's violations of sections (a) and (c) of this rule are in no way affected by these supplemental/amended findings of fact. It is undisputed that Respondent failed to keep these funds separate and apart from his operating and/or personal funds. With respect to (b), Respondent repeatedly states that upon receipt of the check he did not know what these funds represented and simply believed he was entitled to keep them. He takes this position notwithstanding the undisputed fact that the sole payees on the check were the Barnharts. Under the circumstances, the court finds by clear and convincing evidence that Respondent received funds in which the Barnharts clearly had an interest. He was duty bound to promptly deliver to the Barnharts the funds they were entitled to receive. This he failed to do until some three years later. Alternatively, if Respondent was unsure, he should have segregated these funds and kept them separate until any dispute was resolved. This he also failed to do. Although this court now finds that Respondent did in fact promptly (albeit two months later) notify the

Barnharts, the other circumstances lead this court, by clear and convincing evidence, to conclude that Respondent has violated (b) of this rule.

### Rule 8.1 Bar Admission and Disciplinary Matters:

This court has made supplemental/amended findings that Respondent did in fact have the conversation with M. Barnhart on September 30, 2004. This court has made supplemental/amended findings that they discussed the fact of his receipt of the check and the circumstances thereupon. Additionally, this court's supplemental/amended findings that Respondent created and mailed the letter of October 5, 2004 putting forth his position have, in the aggregate, compelled a different conclusion by this court as it relates to this rule. This court, having found contact between Respondent and Barnharts, his written explanation to them (notwithstanding their receipt vel non of the October 5, 2004 letter), and his believe that their silence and the passage of time represented the Barnharts' acquiescence that he could keep the money, result in this court not being persuaded by clear and convincing evidence that Respondent intentionally falsified facts or information to the Petitioner and this court does not find a violation of this Rule.

### Rule 8.4 Misconduct:

This court has found a violation by the Respondent of Rules 1.1, 1.3, 1.4, 1.15, and 3.1. As such, these violations are Professional Misconduct in violation of (a) of this rule and the court so finds.

With respect to (c) of this rule, this court has found that the Respondent did, as of September 30, 2004, advise the Barnharts of the obligation he felt they owed to him. At that time, he also admitted to the Barnharts his receipt of the $1,000 check. By the conversation of September 30, 2004, and his subsequent letter of October 5, 2004, he did in fact state his position regarding the funds. These amended facts do not alter the fact(s) that when he received the check in July or August of 2004 he did not make immediate contact with the Barnharts. He forged their names to the back of the check made payable solely to them without their

knowledge or prior consent. He had no authority to do so at the time of this forgery. He used their funds for his personal or business use at that time without the Barnharts' knowledge or consent. Even if the court accepts his explanation that the passage of time somehow justified his keeping the funds, his actions at the precise moment of negotiating the check clearly represented a violation of Section 8–602 of the Criminal Law Article. This is a violation of (c) and the court so finds by clear and convincing evidence. As previously stated, his use of self-help in the summer of 2004 is not persuasive to this court as to justify or defend his actions. His commingling of their funds with his funds represented dishonesty, fraud, and/or deceit and the court so finds by clear and convincing evidence.

With respect to (d) of this rule, the totality of the Respondent's actions represented conduct prejudicial to the administration of justice by his acting in such a manner which would seriously impair public confidence in the legal profession. His forgery and misappropriation of their funds in July/August of 2004 persuade this court by clear and convincing evidence that Respondent has violated (d).

This court has now had two evidentiary hearings and has had the opportunity on various occasions to observe the Respondent. To this court, Respondent has finally arrived at a realization of the significance and import of his actions. This court no longer observes what the court initially felt represented a cavalier attitude. This court is certainly no longer disheartened by the present actions of the Respondent.

## I. Standard of Review

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. McClain,* 406 Md. 1, 17, 956 A.2d 135, 144 (2008); *Attorney Grievance v. Whitehead,* 405 Md. 240, 253, 950 A.2d 798, 806 (2008); *Attorney Grievance v. Zuckerman,* 403 Md. 695, 709, 944 A.2d 525, 534 (2008); *Attorney Grievance v. Nussbaum,* 401 Md. 612,

632, 934 A.2d 1, 12 (2007); *Attorney Grievance v. Lawson,* 401 Md. 536, 571–72, 933 A.2d 842, 863 (2007). We review the hearing judge's conclusions of law de novo. Md. Rule 16–759(b)(1);[12] *McClain,* 406 Md. at 17, 956 A.2d at 144; *Whitehead,* 405 Md. at 253, 950 A.2d at 806; *Attorney Grievance v. Kreamer,* 404 Md. 282, 292, 946 A.2d 500, 506 (2008); *Attorney Grievance v. Parsons,* 404 Md. 175, 184, 946 A.2d 437, 443 (2008). In our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Md. Rule 16–579(b)(2);[13] *Whitehead,* 405 Md. at 253, 950 A.2d at 806; *Attorney Grievance v. Harris,* 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008); *Nussbaum,* 401 Md. at 632, 934 A.2d at 12; *Attorney Grievance v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007); *Attorney Grievance v. Mininsohn,* 380 Md. 536, 564, 846 A.2d 353, 370 (2004).

## II. Discussion

Petitioner took no exceptions to Judge Martin's Findings of Fact and Conclusions of Law, but took a technical exception to one Finding in the Amended Findings, which we have sustained.

Respondent took numerous exceptions to Judge Martin's Findings of Fact and Conclusions of Law in both the original and Amended Findings. With the exception of the Rule 8.1

---

**12.** Rule 16–759(b)(1) provides:

(b) **Review by Court of Appeals.**
(1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**13.** Rule 16–759(b)(2) provides:

(2) Findings of Fact.
(A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

violation to which Gisriel excepted in the original exceptions, which was rendered moot by Judge Martin's reversal of that finding in his Amended Findings, and exception to Finding Number 7 in the original exceptions regarding the escrow for the $5,000 check, which we sustain, we overrule all other exceptions filed by the Respondent and conclude that there exists clear and convincing evidence to support Judge Martin's Findings and Conclusions in the original Findings, and the Amended Findings of Fact and Conclusions of Law.

### Respondent's Exceptions

#### A. Rule 1.1

Rule 1.1 requires a lawyer to "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that Respondent was not incompetent when he failed to discuss the existence of the mediation clause in the contract with the Barnharts. Although Respondent "certainly did not specifically discuss mediation" and he might have been "careless or even negligent" with his "erroneous conclusion that the contract was a nullity," the court did not find by clear and convincing evidence that Gisriel's behavior exhibited a "failure of competence relating to discussions or information to the client."

Nevertheless, Judge Martin concluded that Respondent did not provide "competent representation" when he "did nothing" to respond to defendants' motions to dismiss the Barnharts' complaint. The judge found Respondent's failure to respond "inexplicable" and evidence of a "failure to demonstrate the requisite knowledge and skill required of him." Respondent concedes that he failed to file an "opposition" to the Motion to Dismiss as required by Rule 2–311(b),[14] but excepts to the

---

**14.** Rule 2–311(b) provides:

**Response.** Except as otherwise provided in this section, a party against whom a motion is directed shall file any response within 15 days after being served with the motion, or within the time allowed

finding that he violated Rule 1.1 and contends that he was competent because he "notified his clients about the motion and communicated with opposing counsel." We disagree. By failing to respond to pleadings, Respondent failed to provide the Barnharts with any representation, much less competent representation. *See, e.g., Attorney Grievance v. Wallace,* 368 Md. 277, 293, 793 A.2d 535, 540 (2002) (ordering disbarment, in part, for failing to communicate with clients and neglecting them).

The hearing judge also concluded that Respondent violated Rule 1.1 when he failed to appear at the May 21, 2003, hearing regarding motions to dismiss and attorneys' fees. The judge found that Respondent "was duty bound to appear at the hearing and be prepared to represent the Barnharts. He did not attend and M. Barnhart appeared alone, a layperson facing several lawyers across the table." Respondent concedes that he "had an obligation to appear until his appearance was stricken," but claims that his actions were acceptable because this was "not a case where the client was abandoned" and "they do things differently in Frederick County" (as opposed to Baltimore County). He cites to the judge's finding that, "[p]rior to any court appearance, the Barnharts decided to take over their own case and advised the Respondent that he was out, i.e. no longer representing them." In support of his point, Respondent cites *Attorney Grievance v. Maignan,* 402 Md. 39, 46, 935 A.2d 409, 413 (2007), and argues that *Maignan* held that an attorney could rely upon his clients' statement that he would handle his appeal *pro se.*

In *Maignan,* the clients retained the attorney to represent them in a lawsuit pending in a circuit court matter. After the action was dismissed, Maignan filed a notice of appeal. When Maignan informed his clients that the retainer agreement did not include the appeal and that he required more money, the

_____

for a party's original pleading pursuant to Rule 2–321(a), whichever is later. Unless the court orders otherwise, no response need be filed to a motion filed pursuant to Rule 1–204, 2–532, 2–533, or 2–534. If a party fails to file a response required by this section, the court may proceed to rule on the motion.

clients informed him they would handle the appeal *pro se,* but neither Maignan nor the clients filed an Information Report with the Court of Special Appeals, and the matter was dismissed. *Id.* at 43, 935 A.2d at 411.

Nearly a year later, the clients retained Maignan to prepare the appellate brief after all, and informed him that the appeal was ongoing and that the time for filing the brief had been extended. The clients paid Maignan $3,000, of which $1,000 was allocated to preparation of the brief. Maignan prepared the brief, printed it, and sent it to the client, and at some point noticed there was no case number. Maignan called the Clerk of the Court of Special Appeals to get the case number and learned that the appeal had been dismissed. The attorney relayed that information to his client who denied the appeal had been dismissed, after which Maignan did no further work. The clients then complained to Bar Counsel that Maignan had inappropriately charged them for work on an appeal that had already been dismissed and that Maignan refused to refund the money paid by them. We sustained the hearing judge's failure to find any violation, because Maignan had never actually represented the clients during the appeal, based upon the judge's explicit finding that,

> An attorney has a duty to keep himself informed as to the status of a case, but in the instant case Respondent did not represent the Thomases on the appeal of the Mercedes Benz matter since they initially elected to pursue the appeal in proper person. The Respondent reasonably relied upon the representations of the Thomases that they were actively pursuing the appeal because he thought he was preparing an appellate brief due initially on September 1, 2003 and extended until December 2003. The Respondent believed he could rely upon the representations made by the Thomases since they were active litigators with a history of *pro se* filings.

*Id.* at 45–46, 935 A.2d at 413. The hearing judge found that for the present case, Gisriel had not been relieved by the court of his obligation, after filing his case, to represent the Barn-

harts nor could Gisriel rely on the Barnharts' lack of legal experience to relieve him of his obligation.

This case is more in accord with *Attorney Grievance v. Mooney,* 359 Md. 56, 753 A.2d 17 (2000). In *Mooney,* the lawyer faced four complaints alleging numerous violations of the Rules of Professional Conduct. In one of the four complaints, a defendant facing criminal charges retained Mooney and met with him to discuss the facts of her case. Mooney entered his appearance, but on the day of trial, failed to show up in court. We held that it was a violation of Rule 1.1 for a lawyer to fail to appear when scheduled, absent sufficient explanation. *Id.* at 75, 753 A.2d at 27. Mooney argued that because he typically assigned his Prince George's County cases to his associate, and because he could not find the client's file, he assumed that he had assigned the case to his associate, but conceded that he may have neglected to assign the case. Finding Mooney's explanation for his failure to appear in court woefully insufficient, we found him in violation of Rule 1.1:

> We have held that it is unacceptable for an attorney to appear in court for a trial or other proceeding unprepared, and that such practice may constitute a violation of MRPC 1.1. *See Attorney Grievance Comm'n v. Ficker,* 349 Md. 13, 39–40, 706 A.2d 1045, 1057–58 (1998) (*Ficker II* ). An attorney who does not even show up for the court appearance violates the same rule, absent sufficient explanation. As we said in *Ficker II,* 349 Md. at 39–40, 706 A.2d at 1057–58:
>
> > The Comment to Rule 1.1 explains, in that regard: "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake...."

*Mooney,* 359 Md. at 74, 753 A.2d at 26. In the case *sub judice,* Respondent did not adequately represent Mrs. Barnhart because he failed to respond to motions to dismiss and to

appear at the hearing. His argument that "they do things differently in Frederick County" (as opposed to Baltimore County) is a specious attempt to minimize his failure to respond to the motion and failure to appear in court for the hearing and represents less than competent representation. We overrule Respondent's exception.

## B. Rule 1.3

 Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Respondent excepts to the hearing judge's finding that Respondent was not diligent, in violation of Rule 1.3. The bases for the conclusion that Respondent violated Rule 1.3 were the same factual findings underlining the violations of Rule 1. 1, i.e., that Respondent failed to respond to motions, failed to attend a hearing, and failed to counsel the Barnharts regarding the implications of litigation. Respondent concedes to "specific instances involving a lack of diligence," but he alleges that, overall, he "acted with diligence and promptness" on behalf of the Barnharts. Respondent argues that the instances involving a lack of diligence are outweighed by "numerous instances in which Respondent acted diligently." He alleges that he "faxed a letter to Martin/Gold Key regarding the termination of the contract," "made phone calls to Martin," "discussed the option of filing a lawsuit with the Barnharts," and "filed suit," all of which, he claims, do not reflect "abandonment" or a "complete lack of diligence." Petitioner notes that the hearing judge made clear that the conduct, or lack thereof, that violated Rule 1.3 occurred after he had, in fact, filed the suit, after which, he dropped the ball regarding the motions to dismiss; Judge Martin did find:

> Certainly the Respondent knew upon receiving the motions to dismiss that mediation was an issue as well as counsel fees. Inexplicably ... he did not respond to the motions nor discuss with the Barnharts what the end result could be. The conduct as described [above under MRPC 1.1] certainly provides clear and convincing evidence that the Respondent did not act with reasonable diligence and promptness.

In *Attorney Grievance v. Awuah*, 374 Md. 505, 516, 823 A.2d 651, 658 (2003), we determined that a lawyer violated Rule 1.3 after "failing to file a timely motion and/or appeal on behalf of his client." In *Attorney Grievance v. Zdravkovich*, 362 Md. 1, 762 A.2d 950 (2000), we disciplined a lawyer who repeatedly failed to return phone calls, respond to letters, or provide accounting for earned fees; in finding that the lawyer violated Rule 1.3, we stated, "this Court has consistently regarded neglect and inattentiveness to a client's interests to be [an ethical violation] warranting the imposition of some disciplinary sanction." *Id.* at 26, 762 A.2d at 963, quoting *Mooney*, 359 Md. at 76, 753 A.2d at 27, in turn quoting *Attorney Grievance Comm'n v. Montgomery*, 296 Md. 113, 120, 460 A.2d 597, 600 (1983) (alterations in original). In the instant case, Respondent failed to respond to motions to dismiss and attend a court hearing. Respondent's inattentiveness to the Barnharts' interests rose to a level of neglect unacceptable in the legal profession, thereby violating Rule 1.3.

## C. Rule 1.4

### 1) Rule 1.4 Original Findings of Fact and Conclusions of Law

█ Rule 1.4(a) provides "[a] lawyer shall ... (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with reasonable requests for information .... (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The hearing judge concluded that Respondent violated Rule 1.4(a) and (b) because he was "utterly lacking" in the manner in which he explained the matter to his clients, because Gisriel, as Judge Martin found, did not explain to his clients, in a reasonable manner: the matter so as to make informed decisions; the mediation requirement; the possibility of sanctions; the results of the attorney fees hearing on September 23, 2003; Respondent's arguing the Barnharts' position at the September 23, 2003, hearing; the judgment against them; Respondent's satisfac-

tion of the judgments; and Respondent's receipt of the $1,000 check.[15]

Respondent excepts to the hearing judge's determination that he failed to explain the mediation requirement and the possibility of sanctions. Contained in the Record as Exhibit 1 is the contract signed by the Barnharts which contains a mediation provision mandating that neither party could initiate any legal action without first submitting any claim arising out of the contract to mediation. The contract also included sanctions for nonadherence, in the guise of attorneys' fees incurred:

> IN THE EVENT BUYER AND/OR SELLER SHALL INITIATE OR COMMENCE ANY ACTION IN ANY COURT OR BEFORE ANY ADMINISTRATIVE AGENCY WITHOUT FIRST SUBMITTING THE DISPUTE OR CLAIM TO MEDIATION AS HEREIN PROVIDED, THE PARTY INITIATING OR COMMENCING SUCH ACTION AGREES TO PAY ALL COSTS AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED TO ENFORCE THE OBLIGATION AS PROVIDED HEREIN TO FIRST MEDIATE THE DISPUTE OR CLAIM. . . .

Respondent testified that he had not spoken to the Barnharts about mediation because "[t]hey didn't bring it up to me," although he clearly was the lawyer entrusted with the duty to interpret the contract. The hearing judge found under Rule

---

15. The exception to the hearing court's finding that Gisriel did not communicate with the Barnharts regarding the receipt of their $1,000 check will be discussed *infra*, because the hearing judge amended this finding of fact and addressed this exception. The exception to the finding that the Barnharts lacked knowledge of the entry of judgment against them will also be discussed *infra*.

With respect to the latter, Respondent argues that the court's reliance on testimony from Mr. Barnhart that he "had no knowledge of whether they were notified or not" about the judgment was not enough to prove a lack of knowledge. Respondent argues that "Petitioner did not carry its burden to prove that the Barnharts had no knowledge of the entry of judgment against them" because "a negative inference may not lead to a shift in the burden of persuasion to the Respondent."

1.1 that Gisriel's failure to discuss the mediation clause with the Barnharts was not incompetent, but found, as well, that the same conduct was violative of Rule 1.4. Gisriel asserts that these are inherently contradictory findings. We disagree. The standard for counseling set forth in Rule 1.4 differs from the standard of care for competence. *See, e.g., Attorney Grievance v. Harris,* 371 Md. 510, 810 A.2d 457 (2002) (holding Rule 1.1 is violated when a lawyer, who may possess legal knowledge and skill, lacks the thoroughness and preparation necessary for a particular case, and Rule 1.4 is violated when a lawyer fails to explain a matter and the effects of orders to the extent reasonably necessary for the client to make informed decisions regarding the representation). Duty of care is different from duty to inform.

Respondent next excepts to the hearing judge's finding that he was arguing the Barnharts' position at the September 23, 2003, hearing, because the results of which "certainly affected them and the situation was made worse by his failing to advise them of the judgment against them," notwithstanding that Gisriel's appearance previously had been stricken. This finding was based upon Respondent's testimony at the November 19, 2008, hearing:

> [GISRIEL:] . . . So we have the hearing [regarding attorneys' fees] or whatever and you know. So [Judge Stepler] came out with the judgments against myself and against the Barnharts. . . . It was like 2,642.50 against me, 1,963.57 against the Barnharts. I paid it. *And by the way, at the hearing I maintained they got—should have gotten the deposit back, and we had a vigorous argument about that.*
>
> \* \* \*
>
> *I maintained at the hearing in September that we should get the money back, that the case was a nullity. We should get the deposit back . . . .*

(emphasis added). Respondent, nevertheless, states that all of his arguments "regarding the various Motions for Attorneys' Fees centered on his representation of the Barnharts in their

suit ... [t]herefore, any and all arguments that he made were somewhat focused on his actions in the course of his representation" and that they were "so interwoven with the same arguments and positions that could have been taken by the Barnharts, that it seems extremely difficult to separate the two" and it "was clear to those present that Respondent did not represent the Barnharts." While it might have been necessary for Gisriel to refer to the underlying suit initiated by the Barnharts at the September 2003 hearing in order to defend himself, he still chose to "vigorously" argue the "we" and the "they" of an attorney who is representing clients. We overrule his exception and find by clear and convincing evidence that he was representing the Barnharts at the September 2003 hearing.

## 2) Rule 1.4 Amended/Supplemental Findings of Fact and Conclusions of Law

In his Amended Findings, Judge Martin found that until September 30, 2004, when Respondent and Marcia Barnhart discussed matters on the telephone, the Barnharts did not know about the entry of the judgment against them or the judgments against the Respondent, did not know about the results of the September 2003 hearing, nor the fact that the Respondent had paid the judgments. In addition, the judge found Respondent did not communicate with the Barnharts about receiving the $1,000 check made payable solely to the Barnharts until the September 2004 phone call, approximately two months after Gisriel received the check.

The judge was persuaded that the Respondent and Barnharts exchanged telephone calls without actually conversing for a period of time before September 30, 2004, and that the "Barnharts called the Respondent to inquire about the check and the Respondent made efforts to call the Barnharts but they had no communication until the September 30, 2004 telephone conversation." Judge Martin's findings of fact, based upon Respondent's testimony at the March 27, 2009, hearing and the contents of the October 5, 2004, letter, are not clearly erroneous. Maryland Rule 16–759(b), governing the

review of a hearing judge's findings in an attorney disciplinary case, specifically provides in relevant part that the Court of Appeals "shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." *See Attorney Grievance v. Harris,* 403 Md. 142, 158, 939 A.2d 732, 742 (2008) ("Consistent with the standard of review for factual findings in attorney discipline cases, we have iterated that the judge may elect to pick and choose which evidence to rely upon") (internal quotations omitted); *Attorney Grievance v. Mba–Jonas,* 402 Md. 334, 344, 936 A.2d 839, 844 (2007) ("We accept [the hearing judge's] finding and [resulting] legal conclusion as she had the opportunity to weigh the credibility of the witnesses. In our review of such disciplinary hearings, we accept the hearing judge's findings of fact . . . unless shown to be clearly erroneous."); *Attorney Grievance v. Robertson,* 400 Md. 618, 630, 929 A.2d 576, 583 (2007) ("Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder,") (internal quotations omitted). Judge Martin also amended his findings to note that Respondent's conversation with M. Barnhart in September 2004, and his October 5, 2004, letter mitigated the severity of his violation, but they did not alter the judge's fundamental conclusions.

In his Amended Exceptions, Respondent argues that the judge's amended findings support, by clear and convincing evidence, that there was not a failure to reasonably communicate. Respondent alleges that his attempts to contact the Barnharts about the $1,000 check before September 30, 2004, was reasonable communication, and that Judge Martin wrongly infers that two months is too long of a time period to reasonably communicate, even after assuming Gisriel attempted to contact the Barnharts. We hold that there was clear and convincing evidence to support Judge Martin's findings that Respondent failed to communicate with the Barnharts until September 30, 2004, at least two months after receiving the check. *See Attorney Grievance v. Harris,* 371 Md. 510, 543, 810 A.2d 457, 477 (2002) (noting it is well settled that a hearing judge "may elect to pick and choose which evidence

... to rely upon ... assess the credibility of the witnesses ... [and that his findings in that regard are entitled to] appropriate deference") (internal quotations omitted) (alterations in original). The hearing judge accepted evidence that Gisriel's first contact with the Barnharts occurred on September 30, 2004, more than two months after Gisriel negotiated the $1,000 check. Based on the foregoing reasons, we hold that there is clear and convincing evidence that Respondent violated Rule 1.4, and we overrule Respondent's exceptions.

## D. Rule 1.15

### 1) Rule 1.15 Original Findings of Fact and Conclusions of Law

██ Rule 1.15 requires a lawyer to keep client property separate from a lawyer's own property, i.e., no commingling of funds, promptly notifying a client upon receiving client property, and keeping client property separate from the lawyer's property when both parties claim an interest, until there is an accounting and severance of their interests. In Judge Martin's original Findings of Fact and Conclusions of Law, he found Respondent's actions constituted multiple violations of Rule 1.15:

> Respondent's position that he kept the one thousand dollar check, made payable solely to the Barnharts, as payment for funds he had expended in satisfying the judgment against the Barnharts is wholly unacceptable to this court. He was clearly duty bound to deposit the check in a separate account and he admittedly failed to do so. Without authority or consent, he deposited the check in his operating account and used the funds for personal or business purposes. As indicated, he failed completely to notify the Barnharts of his receipt of the check and certainly rendered no accounting to them which would have indicated his position and reasons for keeping the funds.

> The obvious question this court addresses is how could the Barnharts even take a position regarding the check when they knew nothing about it? They had no clue of any

of the circumstances and anticipated the check which, unfortunately, was directed to the Respondent. The Respondent obviously commingled their funds with his funds. These actions constitute multiple violations of Rule 1.15, specifically 1.15(a)(b)(c).

The facts are clear, and Respondent does not dispute, that he deposited the check made payable solely to the Barnharts into his operating account.[16] This is clear commingling of funds in violation of Rule 1.15(a) and (c). *See Attorney Grievance v. Blum,* 373 Md. 275, 299, 818 A.2d 219, 233 (2003) (holding that a lawyer who deposited funds from clients into operating and personal accounts prior to "earning" the funds, and consequently used those funds for a "purpose other than the purpose for which" they were entrusted to the lawyer, violated Rule 1.15).

## 2) Rule 1.15 Amended/Supplemental Findings of Fact and Conclusions of Law

In his Amended Findings, Judge Martin reaffirmed his conclusion that Respondent violated Rule 1.15:

This court's prior conclusions as to Respondent's violations of sections (a) and (c) of this rule are in no way affected by these supplemental/amended findings of fact. It is undisputed that Respondent failed to keep these funds separate and apart from his operating and/or personal funds. With respect to (b), Respondent repeatedly states that upon receipt of the check he did not know what these funds represented and simply believed he was entitled to keep them. He takes this position notwithstanding the undisputed fact that the sole payees on the check were the Barnharts. Under the circumstances, the court finds by clear and convincing evidence that Respondent received funds in which the Barnharts clearly had an interest. He

---

**16.** Respondent excepted to the hearing court's finding that he did not communicate with the Barnharts regarding the receipt of their $1,000 check. The hearing court amended this finding of fact so that we address this exception, *infra.*

was duty bound to promptly deliver to the Barnharts the funds they were entitled to receive. This he failed to do until some three years later. Alternatively, if Respondent was unsure, he should have segregated these funds and kept them separate until any dispute was resolved. This he also failed to do. Although this court now finds that Respondent did in fact promptly (albeit two months later) notify the Barnharts, the other circumstances lead this court, by clear and convincing evidence, to conclude that Respondent has violated (b) of this rule.

Judge Martin made the finding that the clerk of the Circuit Court erroneously mailed the check made payable solely to the Barnharts to Gisriel in July 2004. Respondent testified that he received the check in early August 2004, did not immediately know what it was for, and deposited the check in his operating account until he could deal with it following a long vacation. Respondent contends he exchanged phone calls with M. Barnhart in which he discussed his belief that he was entitled to the funds. He claims he did not violate Rule 1.15 based upon his belief that the conversation with his client on the phone in September 2004 and the letter sent in October 2004, which stated, "Call me if [sic] still think that I owe you more money or if you have questions and we will amicably discuss the matter," were enough to satisfy his obligations. Respondent argues that he had a right to keep the money because he never heard from the Barnharts after sending the letter until two and a half years later when he received the grievance. Respondent also argues that his return of the money three years later after the Peer Review Hearing satisfied Rule 1.15.

Under Rule 1.15, a lawyer, with few exceptions, should not commingle client funds with the lawyer's funds. A reasonable lawyer could see that he was not listed on the check and that the Barnharts, as sole payees, had the sole interest in the $1,000. Respondent signed the names of the payees, K. and M. Barnhart on the back of the check, and wrote "Pay to the order of Michael Gisriel," without the Barnharts' consent. He then deposited the check in his operating, not escrow, account

and used the funds for business and personal purposes. These intentional actions were in flagrant disregard of his clients' financial affairs and his obligations under Rule 1.15. *See Attorney Grievance v. Daskalopoulos,* 383 Md. 375, 382, 859 A.2d 653, 657 (2004) (holding Rule 1.15 was violated when "the respondent placed [the client's] funds in a personal account, rather than in his attorney trust account; did not promptly forward those funds to the third party to whom they were due; and failed to account for $38,448.61 of those funds").

### E. Rule 3.1

Under Rule 3.1, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established."

Judge Martin found, "[t]here was no basis ... that was not frivolous" when Gisriel, in obvious disregard of the contractual mediation mandate, filed suit to recover the Barharts' deposit:

... the lawsuit had no merit. There was no basis for doing so that was not frivolous. There was no basis for punitive damages and none was alleged. There was no basis whatsoever to sue Moyer/Remax who were no more than stakeholders. The contract clearly provided steps to be taken by Moyer in the event of a dispute. The respondent never gave them the ability to do so and completely ignored this provision.

There was no basis to sue Martin or Gold Key. The Respondent knew that they were not holding the deposit, he alleged no basis for punitive damages against them.... He simply included Martin/Gold Key in his shotgun approach to get everyone's "attention." These actions were clearly violations of Rule 3.1.

* * *

The legal process should never be used as the Respondent did here, i.e., merely a device to apply pressure to the other parties to secure the return of the deposit, actions which completely backfired.

Respondent excepts to the judge's conclusion, arguing that it was his belief that "the contract was a nullity and that there were reasons to believe that initiating litigation was the appropriate action." Respondent argues his actions were justified because the Barnharts had a cognizable cause of action and the seller lacked capacity to convey the property while he was in bankruptcy. Respondent also cites to the fact that "Marcia Barnhart's father passed away in that time period and the Barnharts were unable to afford the property." He further contends that although he should have known about the mediation provision in the Barnharts' contract, "none of the defendants filed a motion to compel mediation or took other affirmative steps to initiate mediation themselves." Although Gisriel admits that there was no basis to seek punitive damages and that he only filed the complaint to get the defendants' attention, he concludes that his actions were warranted.

We overrule Gisriel's exception, because a reading of the contract reveals that the Barnharts were bound to mediate any dispute; that Gisriel formed an unreasonable belief that the contract was a nullity; and that Gisriel initiated suit to misuse the judicial process. This is violative of Rule 3.1. *See Attorney Grievance v. Davis*, 375 Md. 131, 163, 825 A.2d 430, 449 (2003) ("Rule 3.1 is violated when the lawyer is unable . . . to make a good faith argument on the merits of the action taken.") (internal quotations omitted) (alterations in original).

## F. Rule 8.1

Respondent excepted to the hearing court's original finding that he knowingly made false statements to Bar Counsel and that he had not sent the October 2004 letter to the Barnharts. The hearing judge amended these findings of fact, and was persuaded by clear and convincing evidence that Respondent

did not intentionally falsify facts or information to Bar Counsel and also found that Respondent did in fact have a conversation with M. Barnhart on September 30, 2004, and did send a letter dated October 5, 2004, to the Barnharts. Therefore, Respondent's exceptions to Judge Martin's original findings are rendered moot, and we need not further address Rule 8.1.

## G. Rule 8.4

■ Rule 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice

In his original findings, Judge Martin concluded that Respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation in violation of Rule 8.4(c):

He never told the Barnharts of any obligation he felt they owed him. They knew of none. He never told them of the receipt of the check. He never had authority or consent to endorse their names. He forged their names. He kept their funds without their consent. His actions, his forgery, violated the Rules and Criminal Law Article Section 8–602. See *AGC v. James,* 333 Md. 174, 634 A.2d 48 (1993). Even if the Respondent's tortured explanation of why he did what he did could somehow be accepted, he was not entitled to simply use self help by keeping their funds. See *AGC v. Sheridan,* 357 Md. 1, 741 A.2d 1143 (1999). Unfortunately, this court is of a mind that the Respondent believed the Barnharts did not know of this check and they would never be the wiser. This is clearly dishonesty. His commingling of their funds with his funds involved dishonesty, fraud,

deceit, or misrepresentation. See *Bar Association of Baltimore City v. Carruth,* 271 Md. 720, 319 A.2d 532 (1974).

Respondent excepted to these findings by claiming that his commingling of funds was unintentional and that "he believed in good faith" that he could deposit the check in his operating account to "satisfy the monies he had expended to pay the judgment against the Barnharts...." Respondent concedes that he should not have endorsed his clients' names on the check, but asserts that his actions were not an intent to misappropriate and that he "honestly believed he was equitably entitled to the funds."

After Judge Martin amended his findings, he did not alter his conclusions of law regarding Gisriel's violation of Rule 8.4(c). Even though the judge amended his finding that the Respondent did, as of September 30, 2004, "advise the Barnharts of the obligation he felt they owed to him," the amendment did not alter the fact that upon receipt of the $1,000 check, Respondent "did not make immediate contact with the Barnharts ... [and he] forged their names to the back of the check made payable solely to them without their knowledge or prior consent." The hearing judge noted:

> Even if the court accepts his explanation that the passage of time somehow justified his keeping the funds, his actions at the precise moment of negotiating the check clearly represented a violation of Section 8–602 of the Criminal Law Article. This is a violation of (c) and the court so finds by clear and convincing evidence. As previously stated, his use of self-help in the summer of 2004 is not persuasive to this court as to justify or defend his actions. His commingling of their funds with his funds represented dishonesty, fraud, and/or deceit and the court so finds by clear and convincing evidence.

We overrule Gisriel's exceptions to the Rule 8.4(c) findings and conclusions. Judge Martin found, based upon his review of the $1,000 check and the testimony of Gisriel and Mr. Barnhart, that Gisriel did not have the Barnharts' consent when he forged their names on the check, the only payees, and

then signed it, making it payable to himself. The fact that Gisriel has argued that he did not give his act more than "five seconds of thought" belies the notion that he deliberated, after receiving the check, and determined that he was its equitable owner. His exception fails by omission—the omission of information that he could have solicited from the maker of the check—the Clerk of the Circuit Court and the sole payees, the Barnharts.

We overrule Respondent's exception to the hearing judge's conclusion that he violated Rule 8.4(c) by commingling the Barnharts' funds with his funds, an act representing dishonesty, fraud, deceit, or misrepresentation. In *Attorney Grievance v. Kapoor*, 391 Md. 505, 528, 530, 894 A.2d 502, 516–17 (2006), we held that the lawyer's conduct in forging his client's signature was dishonest, deceitful, and criminal in violation of Rules 8.4(a)-(d), as here. In *Whitehead*, 405 Md. at 258, 950 A.2d at 810, the respondent argued that he did not engage in dishonesty, fraud, deceit, or misrepresentation when he removed $600,000 from a conservatorship, his act was not an "intentional" misappropriation because he took out the money to "maximize the assets of the estate," and he did not act with specific intent to misappropriate; we noted that "specific intent is not a necessary ingredient of *dishonesty or misrepresentation.*" *Id.*, quoting *Siskind*, 401 Md. at 69, 930 A.2d at 344 (emphasis in original) (internal quotations omitted). Dishonest acts, in and of themselves are violative of Rule 8.4(c). *Id.* Although Respondent argues his behavior was "unintentional," his deliberate forgery of the Barnharts' signatures without any solicitation of information, let alone confirmation, was dishonest.

Judge Martin also found that the totality of Respondent's actions, his forgery, and his misappropriation of the Barnharts' funds, represented conduct prejudicial to the administration of justice by his acting in such a manner which would seriously impair public confidence in the legal profession. We have determined misappropriation of client or third party funds to be "prejudicial to the administration of justice" in violation of Rule 8.4(d). *See Whitehead*, 405 Md. at 260, 950

A.2d at 810; *Attorney Grievance v. Zuckerman,* 386 Md. 341, 374–75, 872 A.2d 693, 713 (2005); *Attorney Grievance v. Brown,* 380 Md. 661, 666–69, 846 A.2d 428, 431–32 (2004); *Attorney Grievance v. Somerville,* 379 Md. 586, 592, 842 A.2d 811, 814–15 (2004); *Attorney Grievance v. Gallagher,* 371 Md. 673, 713, 810 A.2d 996, 1020 (2002); *Attorney Grievance v. Santos,* 370 Md. 77, 83, 803 A.2d 505, 508–09 (2002); *Attorney Grievance v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002); *Attorney Grievance v. McCoy,* 369 Md. 226, 235, 798 A.2d 1132, 1137 (2002); *Attorney Grievance v. Snyder,* 368 Md. 242, 260, 793 A.2d 515, 525–26 (2002). We have recognized that public confidence in the legal profession is a critical facet to the proper administration of justice, and conduct that negatively impacts on the public's perception of the courts or the legal profession violates Rule 8.4(d). *Whitehead,* 405 Md. at 260, 950 A.2d at 810, *Attorney Grievance v. Sheinbein,* 372 Md. 224, 252–53 & n. 16, 812 A.2d 981, 996–97 & n. 16 (2002); *Attorney Grievance v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998). Respondent's self-dealing was harmful to the legal profession because his behavior undermines public confidence that an attorney will maintain entrusted funds as a fiduciary and as required by law. As such, and consistent with this Court's well-established precedent, we hold that Respondent violated Rule 8.4(d) by engaging in behavior that was prejudicial to the administration of justice.

Finally, Respondent's violations of Rules 1.1, 1.3, 1.4, 1.15, and 3.1 also constitute violations of Rule 8.4(a). *See Attorney Grievance v. Webster,* 402 Md. 448, 468, 937 A.2d 161 172 (2007) ("Because we have concluded that Respondent has violated various Rules of Professional Conduct, we overrule Respondent's exception that he violated MRPC 8.4(a), which finds professional misconduct where a lawyer 'violates or attempts to violate the Rules of Professional Conduct.' "), quoting *Attorney Grievance v. Cherry–Mahoi,* 388 Md. 124, 159, 879 A.2d 58, 80 (2005); *Attorney Grievance v. Gallagher,* 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002) ("As we have held that respondent has violated several Rules of Professional Conduct, he necessarily violated MRPC 8.4(a) as well, which

finds professional misconduct where a lawyer 'violate[s] or attempt[s] to violate the Rules of Professional Conduct.' ") (alterations in original).

## III. Sanction

We now must consider the appropriate sanction for Gisriel's violations of Rules 1.1, 1.3, 1.4, 1.15, 3.1, and 8.4(a), (c), and (d). Bar Counsel recommends disbarment, while Gisriel suggests a reprimand, or in the alternative, a short suspension, arguing that his acts, though "grossly negligent," do not represent "a disbarment case."

We evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved. *See Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 300, 614 A.2d 102, 114 (1992); *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 680, 496 A.2d 672, 680 (1985). The goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. *Attorney Grievance v. Goff,* 399 Md. 1, 30–31, 922 A.2d 554, 571 (2007); *Mba–Jonas,* 397 Md. at 703, 919 A.2d at 677; *Attorney Grievance v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance v. Kreamer,* 387 Md. 503, 534, 876 A.2d 79, 97–98 (2005). Imposing sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed is consistent with, and in fact furthers, that purpose, *Goff,* 399 Md. at 30–31, 922 A.2d at 571; *Attorney Grievance v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 375 (2003), in that such sanctions promote general and specific deterrence, *Attorney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); protect the integrity of the legal profession, *Attorney Grievance v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001); further the public's confidence in the legal profession, *Attorney Grievance v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Stein,* 373 Md. at 537, 819 A.2d at 375; *Powell,* 369 Md. at 474, 800 A.2d at 789; and take account of the facts and circumstances of each particular case, including any mitigating factors. See *Attorney Grievance v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000);

*Attorney Grievance v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998).

The severity of the sanction to be applied is measured by the egregiousness of the misconduct under the particular facts and circumstances of the case. *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989) ("the extent of the discipline to be applied is generally dependent upon the severity of the misconduct and the particular facts and circumstances surrounding it."). *See Attorney Grievance v. Briscoe,* 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000), quoting *Milliken,* 348 Md. at 519, 704 A.2d at 1241 ("[t]he gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct."). Given the importance we place on maintaining the public's confidence, "the attorney's prior grievance history[,] ... the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated" are relevant considerations, as well. *Attorney Grievance v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003). Regarding whether there is likelihood of repetition, we have recognized one instance of misconduct can be so egregious as to warrant the imposition of a significant sanction. *See Attorney Grievance Comm'n v. Franz,* 355 Md. 752, 762, 736 A.2d 339, 344 (1999), citing *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 263, 619 A.2d 100, 105 (1993) (stating that the attorney, by assisting a client in breaking into the home of the ex-wife of the client, ransacking it, clogging the toilet, stealing personal property, and killing the family kitten, acted in an egregious manner).

Theft and misappropriation of funds constitute egregious misconduct on the part of an attorney. *Attorney Grievance v. Weiss,* 389 Md. 531, 552 886 A.2d 606, 618 (2005). In *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 413–15, 773 A.2d 463, 485 (2001), we articulated that disbarment is the appropriate sanction for intentionally dishonest conduct in the absence of compelling extenuating circumstances. We explained:

Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Id.* at 418, 773 A.2d at 488. Since *Vanderlinde*, we have consistently disbarred attorneys for stealing clients' funds, whether or not the behavior was singular or even if the funds were returned, because of our determination that "the misappropriation of entrusted funds 'is an act infected with deceit and dishonesty,' and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Whitehead,* 405 Md. at 262, 950 A.2d at 811, quoting *Nussbaum,* 401 Md. at 644, 934 A.2d at 19, in turn quoting *Cherry–Mahoi,* 388 Md. at 161, 879 A.2d at 81. *Accord Attorney Grievance v. Prichard,* 386 Md. 238, 248, 872 A.2d 81, 86 (2005); *Attorney Grievance v. James,* 385 Md. 637, 666, 870 A.2d 229, 246 (2005); *Daskalopoulos,* 383 Md. at 384, 859 A.2d at 658; *Attorney Grievance v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004); *Somerville,* 379 Md. at 593, 842 A.2d at 815; *Attorney Grievance v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Vanderlinde,* 364 Md. at 406, 773 A.2d at 480.[17]

In *Vanderlinde,* we held that extenuating circumstances to lessen the sanction of disbarment were only those of the most

---

**17.** In those rare cases in which mishandling client funds was involved, but a Rule 8.4(c) violation was neither charged nor proven, disbarment may not have been the sanction imposed, unlike in *Vanderlinde,* in which a Rule 8.4(c) violation was charged and proven. *See Attorney Grievance v. Goff,* 399 Md. 1, 922 A.2d 554 (2006) (8.4(c) not violated; indefinite suspension); *Attorney Grievance v. Rees,* 396 Md. 248, 913 A.2d 68 (2006) (8.4(c) not charged; 30 day suspension); *Attorney Grievance v. Zuckerman,* 386 Md. 341, 379, 872 A.2d 693, 716 (2005) (8.4(c) not charged; indefinite suspension) *Attorney Grievance v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002) (8.4(c) not violated; indefinite suspension); *Attorney Grievance v. Hayes,* 367 Md. 504, 789 A.2d 119 (2002) (8.4(c) not charged; indefinite suspension).

serious variety. *Id.* at 413–14, 773 A.2d at 485. Mindful of the *Vanderlinde* admonition, a review of Gisriel's purported mitigation falls far short of that which constitutes "compelling extenuating circumstances." Gisriel offered that he has been a member of the Bar of this State since 1976, has no prior disciplinary record, and has provided "significant pro bono services over his thirty-two year career." Respondent also argues that he informed the Barnharts of the receipt of the $1,000 check and offered to return the money if they disagreed with his position that he was entitled to the money and asserts that he had no dishonest or selfish motive. He points also to his remorse that the hearing judge found in his amended findings. This proffered mitigation does not rise to the level of amelioration envisioned in *Vanderlinde* with respect to intentional misappropriation.

With respect to Gisriel's assertion that he was negligent rather than willful, it is true that we have differentiated between negligence and willfulness in a misappropriation context and have determined that disbarment may not be an appropriate sanction for the former. In *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 463, 491, 671 A.2d 463, 470, 484 (1996), we stated that in a misappropriation situation, an indefinite suspension was appropriate for a lawyer who was "grossly negligent in failing to establish proper accounting procedures" when he "failed to make reasonable efforts to ensure that the bookkeepers's actual practices [were] compatible with the professional obligations of the lawyer". Unlike the attorney in *Glenn,* however, Gisriel's conduct, as found by Judge Martin, was infected with willfulness, because he took a check made solely payable to the Barnharts, made it payable to himself, signed his name, and deposited it in his operating account—deliberate acts solely by his own hand.

Gisriel also argues that his conduct, in and of itself, does not warrant disbarment, by comparing his acts to those of the attorneys in *Attorney Grievance v. Mitchell,* 386 Md. 386, 872 A.2d 720 (2005) and *Attorney Grievance v. Watson,* 382 Md. 465, 855 A.2d 1213 (2004). In *Mitchell,* we disbarred an attorney after sustaining the hearing court's determination of

a violation of Rule 8.4(c), when Mitchell or someone acting at his direction endorsed and deposited a client's settlement check in the firm's operating account, closed the firm's location without notice or indication of where he could be found, and took the client's money for his own use to buy a car. *Id.* at 399, 872 A.2d at 727–28. Gisriel argues he is distinguishable from Mitchell because he honestly believed he was entitled to the Barnharts' check. Judge Martin found that Gisriel did what he did because he "believed the Barnharts did not know of this check and they would never be the wiser," a finding not unlike in *Mitchell.*

Gisriel also attempts to distinguish himself from the lawyer in *Watson,* in which we disbarred the attorney, found to have violated Rule 8.4(c), after he intentionally misappropriated client funds, as a result of receiving eight settlement checks, forging his clients' signatures, and appropriating the money for his personal use and benefit. 382 Md. at 470–72, 855 A.2d at 1216–17. Although Gisriel argues that he did not engage in a pattern of impermissible endorsements as in *Watson,* so that he should not be sanctioned as severely, we have held that a single act of misappropriation may be sufficient to warrant disbarment. In *Attorney Grievance v. Roberts,* 394 Md. 137, 146, 166–67, 904 A.2d 557, 562, 574–75 (2006), we disbarred an attorney who received a settlement check for $7,500 made payable to both himself and his client, and after his client endorsed the check, transferred the entire amount of the check to his operating account for personal use. *Id.* at 146, 166–67, 904 A.2d at 562, 574–75. Similar to the attorney in *Roberts,* Gisriel used his client's funds for business and personal use, but he also egregiously forged his clients' names and deposited the check into his operating account, all the while presuming his clients would never be the wiser.

In the case at bar, the Respondent forged his clients' names on a check payable solely to them and made the check payable to himself, without consultation with the clients about the propriety of his acts nor having secured their consent and then deposited the check in his operating account. The fact that Gisriel did not give his receipt of the check, made payable

solely to others, more than "five seconds of thought" is not mitigation—it is aggravation; clients must be given more solicitude than that which was given by Gisriel in the present case, for their protection. Gisriel's conduct, which constituted violations of many of the Rules of Professional Conduct, exacerbated by his hubris in the handling of the $1,000 check, warrants disbarment.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MICHAEL GISRIEL.**

BELL, C.J., and ELDRIDGE, J., Dissent.

Dissenting Opinion by ELDRIDGE, J., which BELL, C.J., Joins.

In light of Judge Martin's supplementary findings of fact, and the Respondent's membership in the Maryland Bar since 1976 without any prior disciplinary record, I would impose a suspension rather than a disbarment.

Chief Judge BELL has authorized me to state that he joins in the views expressed in this dissenting opinion.